IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ADVANCED LITHIUM ELECTROCHEMISTRY (CAYMAN) Co. Ltd., and ADVANCED LITHIUM ELECTROCHEMISTRY CO., LTD., <br><br> *Declaratory Judgment Plaintiffs*, <br><br> v. <br><br> HYDRO-QUEBEC; CENTRE NATIONAL DE LA RECHERCHE SCIENTIFIQUE; UNIVERSITE DE MONTREAL; and LIFEPO4+C LICENSING AG, <br><br> *Declaratory Judgment Defendants*. | Case No. 1:24-cv-01421-RDA-WBP |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................................1

II. STATEMENT OF FACTS............................................................................................................2

III. STANDARD OF REVIEW .........................................................................................................3

IV. ARGUMENT................................................................................................................................4

    A.    The First Amended Complaint Should Be Dismissed Because the Allegations Fail to State a Claim for Patent Invalidity .............................................4

V. CONCLUSION ............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbvie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust.*,
   764 F.3d 1366 (Fed. Cir. 2014) ........................................................................................ 8

*Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*,
   706 F. Supp. 3d 477 (D. Del. 2023) ............................................................................ 1, 5, 6

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*,
   111 F.4th 1358 (Fed. Cir. 2024) ............................................................................... *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 3

*In re: Cellect, LLC*,
   81 F.4th 1216 (Fed. Cir. 2023) .................................................................................. 1, 4, 6

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ........................................................................................... 3

*In re Fallaux*,
   564 F.3d 1313 (Fed. Cir. 2009) ........................................................................................ 9

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
   753 F.3d 1208 (Fed. Cir. 2014) .................................................................................... 7, 8

*Novartis AG v. Ezra Ventures LLC*,
   909 F.3d 1367 (Fed. Cir. 2018) .................................................................................... 5, 9

*Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*,
   909 F.3d 1355 (Fed. Cir. 2018) ........................................................................................ 8

*U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*,
   745 F.3d 131 (4th Cir. 2014) ........................................................................................... 3

*Zimmer Surgical, Inc. v. Stryker Corp.*,
   365 F. Supp. 3d 466 (D. Del. 2019) ................................................................................. 7

**Statutes**

35 U.S.C. § 154(b) ............................................................................................................ 2, 3, 7

Uruguay Round Agreements Act of 1994, Pub. L. No. 103-465, 108 Stat. 4809 ..................... 7

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Hydro-Quebec, Centre National de la Recherche Scientifique, Universite de Montreal, and LiFePO4+C Licensing AG (collectively, "Defendants") respectfully request that the Court dismiss Plaintiffs' First Amended Complaint (Dkt. No. 25) for failure to state a claim upon which relief may be granted and, in accordance with Local Civ. R. 7(F), submit this memorandum in support thereof.

Plaintiffs Advanced Lithium Electrochemistry (Cayman) Co., Ltd. and Advanced Lithium Electrochemistry Co., Ltd.'s (collectively, "Plaintiffs") First Amended Complaint (the "Complaint," Dkt. No. 25) fares no better than Plaintiff's Original Complaint (Dkt. No. 1), which Defendants previously moved to dismiss (Dkt. No. 23). Plaintiffs fail to plead a legally sufficient claim for invalidity as Plaintiffs' contention relies on a mistaken interpretation of the law. Specifically, Plaintiffs seek a finding of invalidity under obviousness-type double patenting, but the putative reference patent they seek to use (the '260 Patent) is not an earlier-filed patent. *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1369 (Fed. Cir. 2024) ("Put otherwise, the fact that the ['318] patent expires later is of no consequence here because it is not a *second*, later expiring patent for the same invention.") (emphasis in original) (internal quotation omitted); *In re: Cellect, LLC*, 81 F.4th 1216, 1230 (Fed. Cir. 2023) ("[Patent claims] are entitled to their full term, including the duly granted PTA, unless they are found to be later-filed obvious variations of earlier-filed, commonly owned claims."); *Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*, 706 F. Supp. 3d 477, 487 (D. Del. 2023) ("putative OTDP references must be earlier-filed to be available as a reference"). Notably, while Plaintiffs amended their Complaint, they failed to address this fundamental legal flaw.

## II. STATEMENT OF FACTS

Plaintiffs filed their Original Complaint against Defendants on August 14, 2024. (Dkt. No. 1). In their Original Complaint, Plaintiffs sought declaratory judgment that U.S. Patent No. 7,601,318 (the "'318 Patent" or "challenged patent") was (1) invalid due to obviousness-type double patenting over U.S. Patent No. 7,285,260 (the "'260 Patent" or "purported reference patent") and (2) unenforceable due to alleged inequitable conduct. (Dkt. No. 1 ¶¶ 18-30).

On December 18, 2024, Defendants filed a Motion to Dismiss the Original Complaint as the inequitable conduct claim involved demonstrably false allegations and the invalidity claim was based on an incorrect understanding of the law and ignored the most recent Federal Circuit precedent on the issue. (Dkt. No. 23).

On December 31, 2024, instead of responding to Defendants' Motion to Dismiss, Plaintiffs filed their First Amended Complaint, dropping the inequitable conduct claim but keeping the invalidity claim based on obviousness-type double patenting. (Dkt. No. 25). While Plaintiffs added a series of quotations from various Federal Circuit cases, no factual allegations were added in the First Amended Complaint.

The '318 Patent issued from Application No. 10/362,763 (the "'763 Application"), which was filed on February 26, 2003 and claimed priority to a PCT application, No. PCT/CA01/01319 filed on September 21, 2001, and is assigned to Defendants Hydro-Quebec, Centre National de la Recherche Scientifique, and Universite de Montreal. The '318 Patent received a congressionally guaranteed patent term adjustment ("PTA") of 1,227 days under 35 U.S.C. § 154(b) due to United States Patent and Trademark Office ("USPTO") delays.

The '260 Patent issued from Application No. 10/362,764 (the "'764 Application"), which was filed after the '763 Application on the same date of February 26, 2003, and claimed priority

to a PCT application, No. PCT/CA01/01350 filed on the same filing date as the PCT application identified by the '318 Patent—September 21, 2001, and is assigned to Defendants Hydro-Quebec, Centre National de la Recherche Scientifique, and Universite de Montreal. The '260 Patent received a PTA of 218 days under 35 U.S.C. § 154(b) due to USPTO delays.

## III. STANDARD OF REVIEW

The Court may dismiss a complaint that fails to state a claim upon which relief can be granted under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

All well-pleaded allegations in the plaintiff's complaint are accepted as true for the purposes of the motion to dismiss inquiry. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, a court is not required to accept any legal conclusions as true. *Iqbal*, 556 U.S. at 678. Instead, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Furthermore, in assessing a Rule 12(b)(6) motion, courts are not confined to the four corners of the complaint and can take judicial notice of matters of public record, such as the file histories of the challenged patent and purported reference patent, as well as certain documents attached to the motion to dismiss that are integral to the complaint and authentic. *See U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) ("It is well established that we may properly take judicial notice of matters of public record, including statutes. We may also consider documents incorporated into the complaint by reference,

3

as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.") (internal quotations and citations omitted).

IV. **ARGUMENT**

Plaintiffs' repeated attempts to plead claims challenging the '318 Patent fail to state a claim under Rule 12. Plaintiffs' Original Complaint suffered from demonstrably false factual allegations, numerous failures to adequately plead inequitable conduct, and a mistaken interpretation of the law that ignored the Federal Circuit's most recent precedent. Plaintiffs' First Amended Complaint tacitly acknowledges some of these deficiencies by dropping the inequitable conduct claim, but it continues to suffer from a mistaken interpretation of Federal Circuit precedent on the issue of obviousness-type double patenting ("OTDP" or "ODP"). Notably, though Plaintiffs amended their complaint after seeing Defendants' original motion to dismiss, they failed to identify any disputed fact issues related to this basis for dismissal and failed to address why the putative reference patent (the '260 Patent) qualifies as an OTDP reference (it does not). *See* (Dkt. No. 25). As such, Plaintiffs' claim for patent invalidity is insufficient as a matter of law and Plaintiffs' request for declaratory judgment should be dismissed.

    A. **The First Amended Complaint Should Be Dismissed Because the Allegations Fail to State a Claim for Patent Invalidity**

Non-statutory obviousness-type double patenting is "a doctrine that limits the term of a patent or, at least, ties later-filed, commonly owned, obvious variations to the expiration date of **an earlier-filed reference patent**." *In re: Cellect, LLC*, 81 F.4th at 1226 (emphasis added), *cert. denied sub nom. Cellect, LLC v. Vidal*, No. 23-1231, 2024 WL 4426602 (U.S. Oct. 7, 2024). The Federal Circuit has instructed that patent claims "are entitled to their full term, **including the duly granted PTA**, unless they are found to be later-filed obvious variations of **earlier-filed, commonly owned claims**." *Id.* at 1230 (emphasis added).

4

As Judge Williams in the District of Delaware succinctly explained, "**[t]hat only earlier-filed patents are proper references is equitable**, since the purpose of OTDP doctrine is to 'prevent a patent owner from extending his exclusive rights to an invention through claims in a later-filed patent that are not patentably distinct from claims in the earlier-filed patent.'" *Acadia Pharms.*, 706 F. Supp. 3d at 487 (quoting *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009)). By contrast, "[i]f a later-filed patent is used as a reference, the logic and purpose of OTDP is flipped on its head: rather than preventing a patent owner from unjustifiably extending the term of a patent, OTDP would operate to cut off a patent term that would have been valid but for a later-filed patent." *Acadia Pharms.*, 706 F. Supp. 3d at 487.

Plaintiffs allege that "the patent owners have obtained an improper time-wise extension of patent rights by obtaining a second patent (the '318 [P]atent) having claims that are not patentably distinct from an earlier patent [(the '260 Patent)]," meaning "the claims of the '318 [P]atent are invalid." (Dkt. No. 25 ¶ 25). Defendants disagree that the claims of the two patents are patentably indistinct[1], but an assessment of claim scope is unnecessary as the '260 Patent does not qualify as an OTDP reference under the Federal Circuit's precedent. *See Novartis AG v. Ezra Ventures LLC*, 909 F.3d 1367, 1375 n.4 (Fed. Cir. 2018) ("Because we find that the '565 patent is not a double patenting reference for the '229 patent, we need not address Ezra's arguments as to whether the '229 patent is patentably indistinct from the '565 patent.").

---

[1] Indeed, one needs to do little more than look at the chart of the claim terms that Plaintiffs included in their Complaint to confirm that the claims are not "patentably indistinct." (Dkt. No. 25 ¶ 24).

Here, Plaintiffs' purported reference patent, the '260 Patent, was **not** filed earlier than the '318 Patent—indeed, it was filed right after[2] on the same day—and cannot be used as an OTDP reference patent for the '318 Patent. *See In re: Cellect, LLC*, 81 F.4th at 1230 ("[Patent claims] are entitled to their full term, including the duly granted PTA, unless they are found to be later-filed obvious variations of **earlier-filed, commonly owned claims**."); *see also Acadia Pharms.*, 706 F. Supp. 3d at 488 ("putative OTDP references **must be earlier-filed** to be available as a reference") (emphasis added). Because the '260 Patent is not "earlier-filed" than the '318 Patent, Plaintiffs fail to state a claim for obviousness-type double patenting as a matter of law. *See Acadia Pharms.*, 706 F. Supp. 3d at 488 ("Because a patent must be earlier-filed to be available as an OTDP reference, the Court finds that the '271 patent does not qualify as a proper reference against the '740 patent.").[3]

Indeed, the Federal Circuit in its precedential *Allergan* decision in August 2024 emphasized that an earlier-filed, later-expiring patent claim cannot be invalidated by a later-filed, earlier-expiring patent claim with the same priority date. *Allergan*, 111 F.4th at 1369 ("[A] first-filed, first-issued, later-expiring claim cannot be invalidated by a later-filed, later-issued, earlier-expiring reference claim having a common priority date."). As other courts have explained, "putative OTDP references must be earlier-filed to be available as a reference." *Acadia Pharms*, 706 F. Supp. 3d at 488.

It is undisputed that the patents share a common priority date claim. (Dkt. No. 25-1 at 1); (Dkt. No. 25-3 at 1). It is also undisputed that the patents were filed the same day on February 26,

---

[2] As is indicated by the '318 Patent's lower application number (Application No. 10/362,**763**), it was in fact filed right before the '260 Patent's application (Application No. 10/362,**764**) on the same day.

[3] Despite Defendants raising this same argument in its original motion to dismiss, Plaintiffs did not address the legal insufficiency in their Complaint. *See* (Dkt. No. 25 at 6-7 (adding citations for the first time to *Allergan* and other cases but failing to address the requirement that the '260 Patent must be earlier-filed to qualify as an OTDP reference to the '318 Patent)).

2003, with the '318 Patent being filed first and the '260 Patent second. It is further undisputed that, by virtue of receiving a Patent Term Adjustment ("PTA") of 1,227 days due to USPTO delays, the '318 Patent claims have a later expiration date than the claims of the '260 Patent, which only received a PTA of 218 days.[4]

While the challenged patent in *Allergan* was also earlier-issued—which is not the case here as the '318 Patent issued later than the '260 Patent due to the USPTO delays—that fact does not change that dismissal is dictated by *Allergan*. The Federal Circuit in *Gilead* explained that for post-URAA[5] patents, as here, issuance dates do not control in the OTDP analysis:

> [I]f the double patenting inquiry was determined by issuance date for post-URAA patents, there could be a significant difference in an inventor's period of exclusivity over his invention (and its obvious variants) based on mere days' difference in the issuance of several patents to the inventor. Here, for example, if the '375 patent issued the day before the '483 patent, in Gilead's view, the last twenty-two months of the term of the '483 patent would be an improper extension of patent term.
>
> Now if the '375 patent issued the day after the '483 patent, those last twenty-two months of the term of the '483 patent would not be an improper extension of patent term.
>
> Such significant vacillations in an inventor's period of exclusivity over his invention and its obvious variants is simply too arbitrary, uncertain, and prone to gamesmanship. Congress could not have intended to inject the potential to disturb the consistent application of the doctrine of double patenting by passing the URAA.

---

[4] But for the PTA awarded to the '318 Patent and the '260 Patent by statute due to USPTO delays, the patents would expire the same day and "obviousness-type double patenting [would] not apply as a matter of law." *See Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 485 (D. Del. 2019). PTA extensions are calculated through a formula used by the PTO, as set forth in 35 U.S.C. § 154(b). It is not possible to predict ex ante the length of a PTA. That the '318 Patent now expires after the '260 Patent is a matter of pure happenstance. The reverse could easily have been made the case if the '318 Patent had fewer PTO delays during prosecution and been awarded a shorter PTA than the '260 Patent.

[5] *See Allergan*, 111 F.4th at 1367 ("Congress's passage of the Uruguay Round Agreements Act of 1994, Pub. L. No. 103-465, 108 Stat. 4809 ('URAA') changed how patent terms were determined. Instead of measuring from issuance date, a patent's term is now measured from its effective filing, or priority, date[.]").

*Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1215–16 (Fed. Cir. 2014). In short, while "for double patenting inquiries, looking to patent issue dates had previously served as a reliable stand-in for the date that really mattered—patent expiration," for post-URAA patents "it is the comparison of [the] patent expiration dates that should control, not merely the issuance dates." *Id.* at 1214–15. In *Gilead*, "the patent owner had crafted a separate chain of applications, not tied to the priority date of an earlier-filed patent that claimed patentably indistinct subject matter" and thus sought to extend the 20-year patent term from filing. *Allergan*, 111 F.4th 1370 (citing *Gilead*, 753 F.3d at 1210). Under those circumstances, "between issuance date and expiration date, the latter serves as the better benchmark in determining the application of ODP post-URAA." *Id.* (citing *Gilead*, 753 F.3d at 1216). Given that the '318 Patent and the '260 Patent are both post-URAA patents, their issuance dates have no bearing on "the date that really matter[s]—patent expiration" and do not alter the fact that *Allergan* requires dismissal of Plaintiffs' claim. *Id.*

In the case of post-URAA patents, the main purpose of OTDP is to prevent patent owners from "claim[ing] different effective filing dates for different patents to extend the life of patent exclusivity." *Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1367 (Fed. Cir. 2018) (citing *Gilead*, 753 F.3d at 1210–11 and *Abbvie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust.*, 764 F.3d 1366, 1369–71 (Fed. Cir. 2014) as examples of such impermissible behavior); *see also Allergan*, 111 F.4th at 1371 ("*Abbvie* is a prime example of the post-URAA scenario we contemplated in *Gilead* where an inventor, seeking to prolong his exclusivity rights over his invention, applies for a second patent on an obvious variant of his invention protected by a first patent and achieves a later expiration date by choosing a different, later priority date than the one relied upon for the first patent.") (internal quotations omitted). This case presents no such concerns, as both the priority date and effective filing date for the '318 Patent and

8

the '260 Patent are the same. *See* (Dkt. No. 25-1 at 1); (Dkt. No. 25-3 at 1). As the Federal Circuit stated in *Novartis AG*, and which is equally applicable here:

> This case [] does not present the concerns that drove recent decisions of this court regarding obviousness-type double patenting in the post-URAA context. For example, there is no potential gamesmanship issue through structuring of priority claims as identified in *Gilead Sciences, Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208 (Fed. Cir. 2014). . . . [T]here is also no concern that Novartis, once its '229 patent issued, sought to subsequently "secur[e] a second, later expiring patent for the same invention" as in *Abbvie Inc. v. Mathilda & Terence Kennedy Institute of Rheumatology Trust.*, 764 F.3d 1366, 1373 (Fed. Cir. 2014).

*Novartis AG*, 909 F.3d at 1374–75.[6] Given the policy concerns that underlie OTDP to prevent gamesmanship based on priority dates, there is no reason to distinguish between the two patents at issue here that were filed on the same day. To use the words of the Federal Circuit: "Put otherwise, the fact that the ['318] patent expires later is of no consequence here because it is not a '*second*, later expiring patent for the same invention.'" *Allergan*, 111 F.4th at 1369 (emphasis in original) (quoting *Abbvie*, 764 F.3d at 1373). Holding otherwise "would not only run afoul of the fundamental purposes of ODP, but effectively abrogate the benefit Congress intended to bestow on patentees when codifying PTA." *Allergan*, 111 F.4th at 1371.

At base, Plaintiffs have attempted to use a doctrine that "has limited force" for post-URAA patents as a get-out-of-jail-free card for part of their license obligations. *See In re Fallaux*, 564 F.3d 1313, 1318 (Fed. Cir. 2009) (explaining that the "unjustified patent term extension justification for obviousness-type double patenting has limited force" post-URAA). Plaintiffs'

---

[6] For these reasons, the references in Plaintiffs' Complaint to "first" and "second" patents from pre-URAA cases are inapplicable to the post-URAA patents at issue here. *See* (Dkt. No. 25 at 6-7 (citing and quoting *In re Longi*, 759 F.2d 887, 893 (Fed. Cir. 1985) and *In re Lonardo*, 119 F.3d 960, 965 (Fed. Cir. 1997)). In the post-URAA realm, the filing dates (actual or priority), not the issuance dates, govern the OTDP analysis.

9

claim for invalidity based on obviousness-type double patenting fails as a matter of law and should be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint with prejudice.


Dated: January 14, 2025

/s/ *April E. Weisbruch*
April E. Weisbruch (Va. Bar No. 79191)
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, NW
Washington, DC 20001-1531
Tele: 202 756 8000
aweisbruch@mwe.com

Kevin Meek (*pro hac vice*)
Aashish Kapadia (*pro hac vice*)
Christian Tatum (*pro hac vice*)
**MCDERMOTT WILL & EMERY LLP**
300 Colorado Street, Suite 2200
Austin, TX 78701
Tele: 512 726 2600
kmeek@mwe.com
akapadia@mwe.com
ctatum@mwe.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2025, the foregoing was filed electronically and served on all counsel of record.

*/s/ April E. Weisbruch*
April E. Weisbruch
