IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| ADVANCED LITHIUM ELECTROCHEMISTRY (CAYMAN) CO. LTD., and ADVANCED LITHIUM ELECTROCHEMISTRY CO., LTD.,<br><br>Declaratory Judgment Plaintiffs,<br><br>v.<br><br>HYDRO-QUEBEC; CENTRE NATIONAL DE LA RECHERCHE SCIENTIFIQUES; UNIVERSITE DE MONTREA; and LIFEPO4+C LICENSING AG,<br><br>Declaratory Judgment Defendants. | Civil Action No. 1:24-cv-01421-RDA-WBP |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' RENEWED
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. STATEMENT OF FACTS ............................................................................................2

III. ARGUMENT..................................................................................................................3

    A. The Purpose of the ODP Doctrine is to Prevent an Unjustified Timewise Extension of Patent Exclusivity by Obtaining more than One Patent for a Patentably Indistinct Invention .......................................................4

    B. The Federal Circuit Has Not Announced the Bright-Line Rule Defendants Suggest and the Cases Defendants Rely on Only Confirm That the ODP Doctrine Applies Here .......................................................................6

        1. In *Cellect*, the Federal Circuit confirmed the ODP doctrine applies to patents with PTA and ensures no extension beyond one full patent term. ......................................................................................7

        2. In *Allergan*, the Federal Circuit considered whether the ODP doctrine would shorten the term of a first-issued, later-expiring patent, a situation not presented here. ..........................................................9

        3. In *Acadia*, the District of Delaware did not have the benefit of the Federal Circuit's analysis in *Allergan*, but reached a similar conclusion in circumstances not presented here. .......................................11

    C. Defendants Reliance on *Gilead* to Argue that Issuance Dates are Irrelevant Fails to Appreciate the Issue Considered and Decided by the Federal Circuit in that Case................................................................................13

IV. CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbvie Inc. v. Mathilda and Terence Kennedy Institute of Rheumatology Trust*,
   764 F.3d 1366 (Fed. Cir. 2014)........................................................................4, 8, 14

*Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*,
   706 F. Supp. 3d 477 (D. Del. 2023)..........................................................................11, 12

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*,
   111 F.4th 1358 (Fed. Cir. 2024) ................................................................... passim

*In re: Cellect*,
   LLC, 81 F.4th 1216 (Fed. Cir. 2023), *cert. denied sub nom. Cellect, LLC v.*
   *Vidal*, No. 23-1231, 2024 WL 4426602 (U.S. Oct. 7, 2024).......................... passim

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ....................................................................................2

*Eli Lilly & Co. v. Barr Labs., Inc.*,
   251 F.3d 955 (Fed. Cir. 2001)...................................................................................5

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
   753 F.3d 1208 (Fed. Cir. 2014)................................................................4, 5, 13, 14

*In re Longi*,
   759 F.2d 887 (Fed. Cir. 1985)...................................................................................4

*Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*,
   909 F.3d 1355 (Fed. Cir. 2018).................................................................................14

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.*,
   566 F.3d 989 (Fed. Cir. 2009).................................................................................12

**Statutes**

35 U.S.C. § 101..............................................................................................................4, 5

35 U.S.C. § 154....................................................................................................................5

35 U.S.C. § 154(b).............................................................................................................14

## I. INTRODUCTION

Defendants' motion to dismiss ("Motion") rests entirely on a single assertion—that "the '260 Patent does not qualify as an [obviousness-type double patenting] reference under the Federal Circuit's precedent." However, that assertion is incorrect and in fact inconsistent with the precedent quoted in both the Motion and the complaint Defendants seek to dismiss. Case after case from the Federal Circuit has confirmed that the well-established doctrine of obviousness-type double patenting ("ODP" or "OTDP") ensures a patent owner does not receive any undue extension of patent exclusivity by obtaining multiple patents claiming non-obvious variants. That is precisely what has occurred here, as pled in Plaintiff's first amended complaint ("Amended Complaint").

Defendants received a first patent—U.S. Patent No. 7,285,260 ("the '260 patent")—reciting synthesis methods for preparing electrode materials. The '260 patent received 218 days of patent term adjustment, giving Defendants a full patent term, 20 years from its priority date plus 218 days, before that patent expired in April 2022. But Defendants wanted more, filing a second patent application on the same day, naming the same inventors and submitting largely overlapping descriptions and figures. The duplicative filing resulted in a second patent—U.S. Patent No. 7,601,318 ("the '318 patent")—reciting patentably indistinct methods and issuing two years later. The later issuance resulted in a patent term adjustment of 1,227 days, so that the second patent purportedly expires on January 30, 2025.

Two years, nine months, and three days—that's the additional patent exclusivity Defendants have gained unless the '318 patent is invalidated. The ODP doctrine exists to prohibit that unjustified extension, barring additional exclusivity for patent claims covering a patentably indistinct method. Once the '260 patent expired, anyone was free to practice that patent, without concern for infringement allegations based on the '318 patent.

1

Hunting for a loophole when none exists, Defendants argue the '260 patent does not qualify as a proper ODP reference, because the application for the '318 patent was filed first—minutes or hours earlier on the same day (there is no time stamp). But no precedent ever created that loophole, and the Federal Circuit has issued no decision with analysis supporting Defendants' argument. Citing no decision on point, Defendants rely instead on cherry-picked quotes from select decisions to suggest a loophole when there is none. However, by ignoring and not contesting the actual rationale of the Federal Circuit in those same decisions, Defendants' motion shows that no law is on their side, and its misinterpretations of the doctrine do not suffice.

In establishing and applying the ODP doctrine, the Federal Circuit has consistently asked the fundamental question of whether the patent owner has obtained an unjustified extension (i.e., more than one full patent term) for the claimed invention. And because that is precisely what Defendants have done with the '260 and '318 patents, the ODP doctrine renders the '318 patent invalid. Accordingly, the Court should deny Defendants' motion to dismiss.

## II.  STATEMENT OF FACTS

As Defendants acknowledge, all well-pleaded allegations in the Amended Complaint must be accepted as true in deciding a motion to dismiss. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Accordingly, the Court, in deciding the Motion, must accept as true that the claims of the '318 patent are patentably indistinct from the claims in the '260 patent. Dkt. No. 25, ¶ 24. Therefore, the only facts relevant to Defendants' motion concerns the timing of the issuance and expiration of the two patents, as illustrated below:



The applications leading to the '260 and '318 patents were filed on the same day and claim the same priority date. Referring to the first timeline in blue, the USPTO issued the '260 patent on October 23, 2007, and granted 218 days of patent term adjustment, which gave Defendants a full patent term before that patent expired in April 2022. Referring to the red timeline, the USPTO issued the '318 patent two years later, on October 13, 2009, and granted Defendants 1,227 days of patent term adjustment. This means that the '318 patent purportedly expires on January 30, 2025. The issuance of two patents to the same patent owner(s) created a double patenting problem—the ODP doctrine prohibits prolonging patent term for patentably indistinct methods by having a later-expired patent, i.e., the '318 patent. Because of the second patent, Defendants received another 1,009 days of patent exclusivity, despite that the patent rights already expired on April 27, 2022. The additional patent term until January 30, 2025, amounts to an unjustified extension of patent exclusivity that the ODP doctrine serves to eliminate.

## III. ARGUMENT

Defendants do not contest the facts pled in the Amended Complaint regarding the prolonged patent term Defendants obtained through the second patent. Nor do Defendants contest the Amended-Complaint-cited cases. But Defendants rely on an incorrect interpretation of the law, suggesting a different version of the ODP doctrine exists. In their motion to dismiss, Defendants rely on cherry-picked sentences taken out of context to argue a bright-line rule that the "later filed" '260 patent can never be an ODP reference to invalidate the "earlier filed" '318 patent. But no such rule exists. To state the obvious, if that were the law, patent applicants would jump on a patent-application-filing frenzy and engage in exactly what Defendants did—filing overlapping patent applications minutes or hours earlier to exploit the alleged loophole and game our patent system. Fortunately and rightfully, the Federal Circuit has not opened such a loophole, as evidenced by Defendants inability to cite any binding precedent establishing one.

Indeed, when reviewing the Federal Circuit's ODP precedent, it is clear that such a rigid test is antithetical to the Court's application of the ODP doctrine. Instead, the Court's focus is not on the filing date (or time of day) as Defendants suggested, but on whether a patentee has obtained an unjustified extension of patent exclusivity—regardless of which application was filed hours or minutes first. Because Defendants have obtained an unjustified extension of patent exclusivity with the '260 and '318 patents, the ODP doctrine applies, and the '318 patent is invalid.

### A. The Purpose of the ODP Doctrine is to Prevent an Unjustified Timewise Extension of Patent Exclusivity by Obtaining more than One Patent for a Patentably Indistinct Invention

This case presents the precise circumstances in which ODP issues arise. "The prohibition against double patenting is a longstanding doctrine of patent law." *Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1212 (Fed. Cir. 2014). U.S. patent law provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter ... may obtain **a** patent therefor." 35 U.S.C. § 101 (emphasis added). The Federal Circuit has repeatedly and consistently interpreted this provision as prohibiting "obtaining more than one patent on the same invention." *Abbvie Inc. v. Mathilda and Terence Kennedy Institute of Rheumatology Trust*, 764 F.3d 1366, 1372 (Fed. Cir. 2014); *see also In re: Cellect*, LLC, 81 F.4th 1216, 1226 (Fed. Cir. 2023), *cert. denied sub nom. Cellect, LLC v. Vidal*, No. 23-1231, 2024 WL 4426602 (U.S. Oct. 7, 2024) ("ODP is a judicially created doctrine that has its roots in 35 U.S.C. § 101, which states that an inventor may obtain 'a patent' (i.e., a single patent) for an invention" and "prevents an inventor from claiming a second patent for claims that are not patentably distinct from the claims of a first patent."). Courts have applied this prohibition "to preclude a second patent on an invention which 'would have been obvious from the subject matter of the claims in the first patent, in light of the prior art.'" *In re Longi*, 759 F.2d 887, 893 (Fed. Cir. 1985).

The ODP doctrine is "based on the core principle that, in exchange for a patent, an inventor must fully disclose his invention and promise to permit free use of it at the end of his patent term." *Gilead*, 753 F.3d at 1212. "Federal courts for over a century have applied the principles of the doctrine as a means to preserve the public's right to use not only the exact invention claimed by an inventor when his patent expires, but also obvious modifications of that invention that are not patentably distinct improvements." *Id.* (*citing Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001) ("The judicially-created doctrine of obviousness-type double patenting ... prohibit[s] a party from obtaining an extension of the right to exclude through claims in a later patent that are not patentably distinct from claims in a commonly owned earlier patent."); *see also Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1366–67 (Fed. Cir. 2024) ("The judicially-created doctrine stems from 35 U.S.C. § 101, which provides that an inventor may obtain 'a patent'" and "[t]he doctrine's primary goal is to prevent an unjustified timewise extension of patent exclusivity beyond the life of a patent."); *In re: Cellect*, 81 F.4th at 1226 ("A crucial purpose of ODP is to prevent an inventor from securing a second, later-expiring patent for non-distinct claims. This purpose applies equally to situations in which the later patents have received grants of PTA resulting from examination delays at the USPTO.").

The circumstances of this case go directly to the primary concern of the ODP doctrine. Defendants have obtained an unjustified extension of patent exclusivity by obtaining two patents claiming patentably indistinct inventions. When the '260 patent issued, Defendants received a full patent term (including 218 days of patent term adjustment to account for delays during prosecution; shown by the blue shading).[1] When the '318 patent issued two years later, Defendants

---

[1] Congress enacted 35 U.S.C. § 154 to allow for patent term adjustment to the term of a patent due to delays in the processing of that patent. *In re: Cellect*, 81 F.4th at 1227. But as explained by the Federal Circuit "[t]here is nothing in the PTA statute to suggest that application

(continued…)

had a second patent covering a patentably indistinct invention and added 1,009 days of unjustified extension.²



If the '318 patent had received no PTA and expired before April 2022, there would be no unjustified extension, and thus no ODP issue. The '260 patent would not be invalid under the *Allergan* decision (as discussed below). But here, where the patent term of the '318 patent extends more than two years *after* expiration of the '260 patent, conferring on Defendants an unjustified extension of patent exclusivity for non-distinct inventions, the ODP doctrine is directly applicable.

Plaintiffs' ODP claim is well founded and squarely in line with the applicable Federal Circuit precedent. The Court should deny Defendants' motion.

### B. The Federal Circuit Has Not Announced the Bright-Line Rule Defendants Suggest and the Cases Defendants Rely on Only Confirm That the ODP Doctrine Applies Here

Defendants argue that because the '318 application was purportedly filed (hours or minutes) before the '260 patent application—on the same day—the '260 patent is not available as

---

of ODP to the PTA-extended patent term would be contrary to the congressional design . . . [a different] interpretation of the PTA statute would effectively extend the overall patent term awarded to a single invention contrary to Congress's purpose by allowing patents subject to PTA to have a longer term than the reference patent." *Id.*

² Defendants indicate they dispute that the patent claims are patentably indistinct, but that is not a question for resolution at this stage. The patents are presumed to be indistinct as alleged in the Amended Complaint and for the purpose of this motion.

6

an obviousness-type double patenting reference. *See* Dkt. No. 33-1 at 6 ("the '260 Patent, was not filed earlier than the '318 Patent—indeed, it was filed right after on the same day—and cannot be used as an OTDP reference patent for the '318 Patent."). But no Federal Circuit authority announces any such bright-line rule. On the contrary, when applying the ODP doctrine, the Federal Circuit has consistently focused on whether the patent owner has prolonged patent exclusivity. When considering the analysis and rationale of the three primary decisions Defendants cite in their brief—and not just single sentences plucked out of the blue without context—the lack of support for Defendants' bright-line test it needs the Court apply to decide this case as a matter of law becomes readily apparent. All three decisions Defendants rely on in fact support application of the ODP doctrine under the circumstances of this case.

    **1.    In *Cellect*, the Federal Circuit confirmed the ODP doctrine applies to patents with PTA and ensures no extension beyond one full patent term.**

Defendants cite a sentence from the Federal Circuit's *In re Cellect* decision to support their purported bright-line test, but ignore the actual holding and analysis in the case. In *Cellect*, as shown in the chart in the decision (reproduced below), five related patents all had different expiration dates solely attributable to different amounts of patent term adjustment:



During reexamination, the PTAB found the claims in the challenged patents (which had later expiration dates from PTA) were patentably indistinct from the earliest expiring patent (which had no PTA). Accordingly, the PTAB determined the challenged claims were invalid under the ODP doctrine. On appeal to the Federal Circuit, patent owner Cellect argued that the PTAB should have used the expiration date *before* the addition of any granted PTA for determining whether or not claims are unpatentable under ODP (in which case the challenged claims would have been valid). The Federal Circuit disagreed. Relying on its earlier precedent, the Court explained:

> In *AbbVie*, we held that ODP continues to apply where two patents that claim the same invention have different expiration dates, including where the different expiration date is due to a grant of PTA. 764 F.3d at 1373–74. Here, we have related patents that claim priority from the same application that, as conceded by Cellect, claim overlapping subject matter and that have different expiration dates only because of PTA. Thus, under *AbbVie*, ODP still applies to ensure that the applicant is not receiving an unjust extension of time.

*In re: Cellect*, 81 F.4th at 1227–28. *Cellect* presents the same situation as this case. Two patents with indistinct claims have different expiration dates solely because of the addition of PTA. *Cellect*—like *Abbvie* before it—confirms that ODP applies to ensure Defendants do not receive an extension of patent exclusivity with the '318 patent after the '260 patent expired.

Ignoring the analysis and holding of *Cellect*, Defendants argue that in that case "[t]he Federal Circuit has instructed that patent claims 'are entitled to their full term, including the duly granted PTA, unless they are found to be later-filed obvious variations of earlier-filed, commonly owned claims.'" Dkt. No. 33-1, at 4. Defendants suggest *Cellect* announces a blanket statement from the Federal Circuit, but in doing so cropped out important context: the sentence in question concerned non-asserted claims in the challenged patents and expressly stated that "[w]e have no basis for consideration of that issue here." *In re: Cellect*, 81 F.4th at 1230. The sentence is dicta, not a bright-line test to be relied on here to dismiss this case as a matter of law. Indeed, in the sentence immediately before that quoted, the Court confirmed that because the claims of the later-

8

expiring patents were indistinct from the earliest-expiring patent, any extension beyond the expiration of the earliest-expiring patent would constitute an inappropriate timewise extension for the challenged claims. *Id.* That is the same situation we find ourselves in here. *In re Cellect* confirms that the ODP doctrine applies to the '260 and '318 patents.

> **2. In *Allergan*, the Federal Circuit considered whether the ODP doctrine would shorten the term of a first-issued, later-expiring patent, a situation not presented here.**

Defendants' reliance on *Allergan* fares no better. According to Defendants, *Allergan* stands for the general proposition that "that an earlier-filed, later-expiring patent claim cannot be invalidated by a later-filed, earlier-expiring patent claim with the same priority date." Dkt. 33-1, at 6. Not so. Defendants again rely on a single sentence, while ignoring paragraphs of legal analysis and rationale explaining application of the ODP doctrine to the facts in that case. When considering the complete analysis, *Allergan* does not support the test advanced by Defendants, and instead confirms that the '318 patent is invalid under the ODP doctrine in this case.

In *Allergan*, the earliest issued patent in a family received 467 days of patent term adjustment, and two later patents issued without any patent term adjustment. As a result, the two later issued patents expired earlier than the first issued patent.



9

The Federal Circuit found that ODP would not invalidate the earliest issued patent under these circumstances, explaining:

> We conclude that the claims of the '011 and '709 reference patents are not proper ODP references that can be used to invalidate claim 40 of the '356 patent. **That is the only conclusion consistent with the purpose of the ODP doctrine, which is to prevent patentees from obtaining a *second* patent on a patentably indistinct invention to effectively extend the life of a *first* patent to that subject matter**. . . . Sun's contrary position would require us to conclude that the '356 patent—the first-ever patent covering eluxadoline—extends Allergan's period of exclusivity to the subject matter claimed in the '011 and '709 continuation patents simply because it expires later. That position is antithetical to the principles of ODP.
>
> **The '356 patent is undoubtedly the "first" patent to cover eluxadoline**, whether we measure by filing date or by issuance date. And each of the '011 and '709 patents is unquestionably "second" to that patent; neither of the applications leading to those patents was even filed until after the '356 patent issued. . . . **Applying the fundamental purposes of ODP to these undisputed facts, the claims of the '356 patent do not "extend or prolong the monopoly [on eluxadoline] beyond the period allowed by law,"** . . . and therefore are not subject to ODP over the '011 and '709 patents. . . . **As the first-filed, first-issued patent in its family, it is the patent that sets the maximum period of exclusivity for the claimed subject matter and any patentably indistinct variants.** We therefore hold that a first-filed, first-issued, later-expiring claim cannot be invalidated by a later-filed, later-issued, earlier-expiring reference claim having a common priority date.

*Allergan*, 111 F.4th at 1369 (emphasis added).

Considering the Court's rationale above, it is clear that *Allergan* does not support Defendants' bright-line, filing-date test. Indeed, put in the terminology of *Allergan*, the '260 patent is the "first-issued patent" and "sets the maximum period of exclusivity for the claimed subject matter and any patentably indistinct variants." A later issued patent could not operate to shorten the term of the '260 patent. Thus, if the '318 patent received no PTA, it could not shorten the term of the '260 patent. But that is not the case here; the Defendants enjoyed the full patent term of the '260 patent. However, Defendants' later-issued '318 patent extends the "maximum period of exclusivity" by over two years. Rather than support Defendants' motion, *Allergan* confirms why the motion must be denied.

### 3. In *Acadia*, the District of Delaware did not have the benefit of the Federal Circuit's analysis in *Allergan*, but reached a similar conclusion in circumstances not presented here.

The third case cited in Defendants motion is a non-binding district court case, *Acadia Pharms. Inc. v. Aurobindo Pharma Ltd.*, 706 F. Supp. 3d 477, 487 (D. Del. 2023), on which Defendants reliance is misplaced.

As in *Allergan*, *Acadia* involved a patent family in which a first-issued patent—because of a patent term adjustment—expired later than a related later-filed patent having no patent term adjustment. The Acadia decision included a chart showing the relationship between the patents:



The district court noted that "[t]he Court has been unable to identify a case where, when challenged, a later-filed, later-issued, earlier-expiring patent was used as an OTDP reference to invalidate an earlier-filed, earlier-issued, later-expiring patent." *Acadia*, 706 F. Supp. 3d at 487. *Acadia* would have benefited from the Court's analysis in *Allergan*. In the absence of such guidance, the district court relied on the filing dates of the two applications, concluding that the filing date of the child application two years after the parent application rendered the patent unavailable as an ODP reference. While *Acadia* superficially appears to announce Defendants'

preferred bright-line rule, it cites the same incomplete quote from *Cellect* that is dicta and its rationale echoes that of *Allergan*. The court explained its analysis as follows:

> That only earlier-filed patents are proper references is equitable, since the purpose of OTDP doctrine is to "prevent a patent owner from extending his exclusive rights to an invention through claims in a later-filed patent that are not patentably distinct from claims in the earlier-filed patent." *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009); *see also Cellect*, 81 F.4th at 1226 (OTDP "limits the term of a patent or, at least, ties later-filed commonly owned, obvious variations to the expiration date of an earlier-filed reference patent."). **If a later-filed patent is used as a reference, the logic and purpose of OTDP is flipped on its head: rather than preventing a patent owner from unjustifiably extending the term of a patent, OTDP would operate to cut off a patent term that would have been valid but for a later-filed patent**.

*Acadia*, 706 F. Supp. 3d at 487 (emphasis added). Defendants cite this same passage in the Motion but fail to appreciate that it actually confirms why the ODP doctrine is applicable here. *Acadia* is consistent with *Allergan*, finding that it would be contrary to the policy behind the ODP doctrine to allow the term of an earlier-issued, later-expiring patent to be cut short by a later-issued, but earlier-expiring patent. However, *Acadia*'s reliance on application filing dates instead of patent issuance dates is flawed because the period of exclusivity is defined by the time period between patent issuance and patent expiration. *Allergan* confirmed that the maximum life of the first patent—the period from issuance to expiration—should not be shortened by later issuing patents.

Critically, the *Acadia* situation is not present here. The application for the '260 patent was not filed two years after the '318 patent, the applications were filed on the same day. And the '260 patent did not issue after the '318 patent, instead the '260 patent issued first and set the maximum period of exclusivity, including over 200 days of patent term adjustment. Defendants' attempt to further extend their monopoly with the '260 and '318 patent is barred by the ODP doctrine. As a result, the '260 patent is available as an ODP reference (as a matter of law) and Defendants' motion should be denied.

### C. Defendants Reliance on *Gilead* to Argue that Issuance Dates are Irrelevant Fails to Appreciate the Issue Considered and Decided by the Federal Circuit in that Case

Perhaps implicitly acknowledging that the rationale of *Allergan* and its emphasis on the date of patent issuance undercut the Motion, Defendants attempt to downplay their flawed logic by returning to the Federal Circuit's *Gilead* decision, but again fail to appreciate that the issue the Court was considering in that case offers no help to Defendants' position here. In fact, *Gilead*'s focus on expiration dates is even worse for Defendants' argument and confirms that the ODP doctrine applies to the patents at issue here.

In *Gilead*, the Court considered the specific issue of "whether a later-issued patent can serve as a double patenting reference for an earlier-issued patent if the later one expires first." *Gilead*, 753 F.3d at 1214. It was argued by Gilead, relying on earlier authority, that the Court should look only to the issuance date of the challenged patent and reference patent to determine whether the reference patent was a proper ODP reference. The Court rejected this argument noting that "looking to patent issue dates had previously served as a reliable stand-in for the date that really mattered—patent expiration" and that "that tool does not necessarily work properly for patents to which the URAA applies, because there are now instances, like here, in which a patent that issues first does not expire first." *Id.* at 1215. The Federal Circuit concluded that:

> Looking instead to the earliest expiration date of all the patents an inventor has on his invention and its obvious variants best fits and serves the purpose of the doctrine of double patenting. **Permitting any earlier expiring patent to serve as a double patenting reference for a patent subject to the URAA guarantees a stable benchmark** that preserves the public's right to use the invention (and its obvious variants) that are claimed in a patent when that patent expires.

*Id.* at 1216 (emphasis added). While Defendants are correct that issue dates alone are not controlling, *Gilead*—including the quotes relied on by Defendants in their motion—poses an even bigger problem for Defendants. *See* Dkt. No. 33-1 at 8 (arguing "for post-URAA patents 'it is the

comparison of [the] patent expiration dates that should control, not merely the issuance dates'" and "between issuance date and expiration date, the latter serves as the better benchmark in determining the application of ODP post-URAA."). The '318 patent expires more than two years after the '260 patent. Using the expiration dates—as Defendants argue *Gilead* requires—confirms that the earlier-expiring '260 patent is available as a ODP reference in this case.

Defendants are also incorrect in arguing that "the ***main purpose*** of OTDP is to prevent patent owners from 'claim[ing] different effective filing dates for different patents to extend the life of patent exclusivity.'" Dkt. No. 33-1 at 8 (citing *Novartis Pharms. Corp. v. Breckenridge Pharm. Inc.*, 909 F.3d 1355, 1367 (Fed. Cir. 2018). As noted above, the Court has consistently articulated the main purpose of the ODP doctrine is to prevent an unjustified extension of patent exclusivity. While the potential for gamesmanship—including with different effective filing dates—is an issue that has arisen in some of the Federal Circuit's decisions, the lack of gamesmanship does not override an unjustified extension, as expressly stated in the *Cellect* decision:

> The ability of the applicant to show good faith during prosecution does not entitle it to a patent term to which it otherwise is not entitled. An applicant's ability to show that it did not engage in gamesmanship in obtaining a grant of PTA **is not sufficient to overcome a finding that it has received an unjust timewise extension of term**.

*In re: Cellect*, 81 F.4th at 1230 (emphasis added). Accordingly, that the '260 and '318 patents share the same priority date is irrelevant here and does not overcome the unjust timewise extension Defendants have received with the '260 and '318 patents.[3]

---

[3] *See Abbvie*, 764 F.3d at 1373 ("Patents claiming overlapping subject matter that were filed at the same time still can have different patent terms due to examination delays at the PTO. See 35 U.S.C. § 154(b) (patent term adjustments) . . . . When such situations arise, the doctrine of obviousness-type double patenting ensures that a particular invention (and obvious variants thereof) does not receive an undue patent term extension.").

14

## IV. CONCLUSION

Defendants' motion to dismiss is based on misreading the binding precedent and mischaracterizing the obviousness-type double patenting doctrine and how it is applied. The '260 patent is a proper, invaliding reference for the ODP analysis raised in Plaintiffs' complaint. Because the '318 patent confers and unjustified, 1,009-day extension of patent exclusivity, this later-expired patent must be invalid, regardless of whether it was filed minutes or hours before the '260 patent. The Court should deny Defendants' motion to dismiss.

Dated: January 28, 2025

Respectfully submitted,

*/s/ Bradford C. Schulz*
Bradford C. Schultz (VA Bar No. 91,057)
**FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
Phone: (571) 203-2700
Fax: (202) 408-4400

Ming-Tao Yang (*pro hac vice*)
ming.yang@finnegan.com
Jeffrey D. Smyth (*pro hac vice*)
jeffrey.smyth@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
3300 Hillview Ave.
Palo Alto, CA 94304
Telephone: (650) 849-6783

ATTORNEYS FOR PLAINTIFFS
Advanced Lithium Electrochemistry (Cayman) Co. Ltd. and Advanced Lithium Electrochemistry Co., Ltd.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 28, 2025, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to all counsel of record who have appeared in this case.

*/s/ Bradford C. Schulz*
Bradford C. Schultz
